474 S.E.2d 613

**Georgia D. YOURTEE, Administratrix of the Estate of Michael Yourtee, Deceased, Appellant,**

**v.**

**Robert A. HUBBARD, Appellee.**

**No. 22885.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 23, 1996.

Decided July 19, 1996.

David M. Hammer, Joseph R. Ferretti,
Hammer, Ferretti & Schiavoni, Martinsburg,

and Byron Craig Manford, Martinsburg, for Appellant.

Norwood Bentley III, Kimberly S. Croyle, Bowles Rice McDavid Graff & Love, Martinsburg, for Appellee.

RECHT, Justice.

This is an appeal from a final order of the Circuit Court of Berkeley County, which granted the motion of the defendant, Robert Hubbard, for a judgment notwithstanding the verdict returned in favor of the plaintiff below, Georgia Yourtee, Administratrix of the estate of her son, Michael Yourtee. The plaintiff's decedent was killed when a stolen automobile, in which he was a passenger and which he assisted in stealing, crashed into a brick wall following a high speed chase in an attempt to elude capture. The trial court granted the motion for judgment notwithstanding the verdict on the grounds that the theft of the automobile and subsequent negligent acts of Mr. Yourtee and his friends constituted an intervening efficient cause which broke the chain of causation and was the proximate cause of Mr. Yourtee's death, rather than the conduct of the defendant in creating the condition that permitted the automobile to be stolen. We agree with the decision of the circuit court in granting the motion for judgment notwithstanding the verdict, not necessarily for the reasons announced by the trial court, but for a more fundamental reason based on a lack of a duty owed to a person participating in the theft of a motor vehicle.

## I.

### THE FACTS

On March 3, 1989, the defendant, Robert Hubbard, parked his automobile in front of his video rental store located in a strip style shopping center in Berkeley County, West Virginia. At the same time, the plaintiff's decedent, Michael Yourtee, and three other youths under the age of eighteen, were on a mission to steal a motor vehicle. One of the youths was James L. Tomblin II, a lad of seventeen years. The young men happened upon the defendant's automobile, which they found to be unlocked with the ignition key available.[1]

Mr. Tomblin was designated to steal the defendant's automobile and drive around the shopping center until he found Mr. Yourtee and his companions waiting at another location within the center. During the remainder of that day and into the early hours of the next morning, the young men alternated as drivers of the stolen automobile. At one point in the early morning hours of the following day, the crime spree included stealing a case of beer from a convenience store. Upon leaving the convenience store, the driver (who was not Mr. Yourtee) moved the automobile through a stoplight without stopping. Believing that they were being followed by a security guard from a bank they had passed, the driver began to accelerate the speed of the automobile in excess of ninety miles per hour in an effort to elude those who were thought to be chasing the stolen car. During this high speed maneuvering, and while the automobile was in motion, Mr. Tomblin traded places with the driver. Mr. Tomblin continued the high rate of speed until he came upon a left turn that could not be successfully negotiated. The automobile, which was traveling at approximately eighty miles per hour, struck a brick wall. Mr. Yourtee did not survive the impact.

The plaintiff, as Administratrix of her son's estate, filed a wrongful death claim under W. Va.Code 55–7–5 (1931).[2] Named as defen-

1. There is conflicting evidence as to whether the keys were in the ignition with the engine running, or whether the keys were left in the ignition with the engine not running, or whether the keys fell on the ground as the defendant exited his vehicle. In any event, the ignition keys were in or around the automobile, which facilitated its theft.

2. W. Va.Code 55–7–5 (1931) provides:

Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person

dants were Robert Hubbard (the owner of the automobile), James L. Tomblin II (the driver of the automobile), and Teresa E. Tomblin (the mother of James L. Tomblin II).[3]

The only defendant at the time of trial was Robert Hubbard. The jury returned a verdict awarding the plaintiff damages in the amount of $275,324.64, and apportioned fault as follows: James L. Tomblin II (60%); Mr. Yourtee (30%); Robert Hubbard (10%); and the plaintiff, Georgia Yourtee (0%).[4] The defendant filed post-trial motions, including a motion for judgment notwithstanding the verdict under Rule 50(b) of the West Virginia Rules of Civil Procedure.[5] The circuit court granted the motion for judgment notwithstanding the verdict for the reasons that we have previously stated. It is from this order that the plaintiff now appeals.

## II.

## STANDARD OF REVIEW

■ We recently had an opportunity to formulate the standard of review in those cases where a trial court grants a motion for judgment notwithstanding the verdict, as compared to those cases where a trial court denies a motion for judgment notwithstanding the verdict. *Compare Alkire v. First*

*Nat'l Bank,* 197 W.Va. 122, 475 S.E.2d 122 (1996) *with Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 457 S.E.2d 152 (1995) *and Mildred L.M. v. John O.F.,* 192 W.Va. 345, 452 S.E.2d 436 (1994). As in *Alkire,* we are concerned in this case with reviewing the trial court's granting of a motion for judgment notwithstanding the verdict, which we review as follows:

In reviewing a trial court's granting of a motion for judgment notwithstanding the verdict, it is not the task of the appellate court reviewing facts to determine how it would have ruled on the evidence presented. Its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, in ruling on the granting of a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally sufficient to sustain the verdict, it is the obligation of the appellate court to reverse the circuit court and to order judgment for the appellant.

Syllabus Point 2, *Alkire v. First Nat'l Bank,* 197 W.Va. 122, 475 S.E.2d 122 (1996).

■ We review the granting of a motion for judgment notwithstanding the verdict *de novo.* Syllabus Point 3, in part, *Alkire v.*

injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter. No action, however, shall be maintained by the personal representative of one who, not an infant, after injury, has compromised for such injury and accepted satisfaction therefor previous to his death. Any right of action which may hereafter accrue by reason of such injury done to the person of another shall survive the death of the wrongdoer, and may be enforced against the executor or administrator, either by reviving against such personal representative a suit which may have been brought against the wrongdoer himself in his lifetime, or by bringing an original suit against his personal representative after his death, whether or not the death of the wrongdoer occurred before or after the death of the injured party.

3. Ms. Tomblin was named as a defendant on the theory that her negligent supervision of her minor son, James L. Tomblin II, was a proximate cause of Mr. Yourtee's death. Both Ms. Tomblin

and her son reached settlements with the plaintiff, which were ultimately offset against the verdict returned in favor of the plaintiff.

4. The trial court reduced the award by $82,-597.40, representing the percentage of negligence attributable to Mr. Yourtee (30%). The verdict was further reduced by $20,000.00, reflecting the amount of the settlement between Mr. Tomblin and his mother, thereby creating a net judgment in the amount of $172,727.24. The trial court also awarded prejudgment interest on the medical, hospital, physician and funeral expenses, increasing the total judgment to $180,-717.14.

5. W. Va. R. Civ. P. 50(b) provides, in pertinent part:

If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed.

*First Nat'l Bank,* 197 W.Va. 122, 475 S.E.2d 122 (1996). Our charge is to determine if, after review, the evidence is shown to be legally sufficient to sustain the verdict, then it is the obligation of this Court to reverse the judgment of the circuit court and reinstate the verdict for the appellant. *Alkire v. First Nat'l Bank,* 197 W.Va. 122, 475 S.E.2d 122 (1996). Through the following analysis, we do not conclude that the evidence is legally sufficient to sustain the verdict in favor of the plaintiff, so our obligation is satisfied by affirming the order granting the defendant's motion for judgment notwithstanding the verdict.

## III.

## DISCUSSION

### A.

*Common Law Cause of Action Arising From Violation of a Statute*

The focal point of the plaintiff's theory of recovery against the defendant is W. Va. Code 17C–14–1 (1951), also known as the unattended motor vehicle statute, which provides:

> No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key, and effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway.

The plaintiff contends that by allowing the ignition key to be easily accessible to the defendant's unattended automobile, the defendant violated W. Va.Code 17C–14–1 (1951). The theory continues that the violation of W. Va.Code 17C–14–1 (1951) is prima facie evidence of negligence and is actionable because the violation was the proximate cause of the death of the plaintiff's decedent.

*See* Syllabus Point 1, *Anderson v. Moulder,* 183 W.Va. 77, 394 S.E.2d 61 (1990).

Is the application of W. Va.Code 17C–14–1 (1951) dispositive of the facts of this case? This case presents the first occasion that we have had to discuss the scope of the unattended motor vehicle statute as it relates to injuries caused to third persons. W. Va. Code 55–7–9 (1923) expressly authorizes civil liability based on a violation of a statute:

> Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages.

W.Va.Code 55–7–9 (1923).

Building on this statutory provision, we have consistently held that a violation of a statute is prima facie evidence of negligence, providing that such violation is the proximate cause of the injury.[6] *See, e.g., Powell v. Mitchell,* 120 W.Va. 9, 196 S.E. 153 (1938); *Porterfield v. Sudduth,* 117 W.Va. 231, 185 S.E. 209 (1936).

The trial court was of the view that as a matter of law, the violation of W. Va.Code 17C–14–1 (1951) was not the proximate cause of the death of the plaintiff's decedent, reasoning that the criminal acts and subsequent negligence of Messrs. Tomblin and Yourtee were an intervening efficient cause that broke the chain of causation between the defendant's negligent act of leaving the keys in an unattended motor vehicle and the death of the plaintiff's decedent. The absence of proximate cause stimulated the trial court's entering of a judgment notwithstanding the verdict in favor of the defendant. While we agree with the trial court and reserve discussion on that issue for a later portion of this opinion, there is a more fundamental explanation as to why the unattended motor vehicle statute does not lend aid and comfort to the plaintiff's cause.

---

**6.** Syllabus Point 6, *Morris v. City of Wheeling,* 140 W.Va. 78, 82 S.E.2d 536 (1954) states:

A *prima facie* case of actionable negligence is that state of facts which will support a jury finding that the defendant was guilty of negligence which was the proximate cause of plaintiff's injuries, that is, it is a case that has proceeded upon sufficient proof to the stage where it must be submitted to a jury and not decided against the plaintiff as a matter of law.

Whenever a violation of a statute is the centerpiece of a theory of liability, the question arises whether the statute creates an implied private cause of action. *See Hurley v. Allied Chem. Corp.*, 164 W.Va. 268, 262 S.E.2d 757 (1980).

*Hurley* was the first occasion that this Court considered the question of when a statute gives rise to a private cause of action. We formulated the following test:

> The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

Syllabus Point 1, *Hurley*, 164 W.Va. 268, 262 S.E.2d 757.

■ Measuring this case by the *Hurley* standards, we must first ascertain if the plaintiff's decedent was within the universe of persons that the statute was designed to benefit. Stated more specifically, the question is whether a person who participates in the theft of an unattended motor vehicle, in which the ignition keys were readily available, is within the class of persons that W. Va.Code 17C–14–1 (1951) was designed to protect.

The authorities of our sister states have generally concluded that the unattended motor vehicle statute was enacted, in part, to protect the public against car theft and/or runaway cars. *See, e.g., Hartford Ins. Co. v. Manor Inn*, 335 Md. 135, 642 A.2d 219, 229 (1994) (citations omitted); *Rollins v. Petersen*, 813 P.2d 1156, 1164 (Utah 1991); *Davis v. Thornton*, 384 Mich. 138, 180 N.W.2d 11, 14 (1970); *Richards v. Stanley*, 43 Cal.2d 60, 271 P.2d 23 (1954); *Ney v. Yellow Cab Co.*, 2 Ill.2d 74, 117 N.E.2d 74, 77 (1954); *Anderson v. Theisen*, 231 Minn. 369, 43 N.W.2d 272, 273 (1950); *Sullivan v. Griffin*, 318 Mass. 359, 61 N.E.2d 330, 332 (1945). However, an exhaustive search failed to yield any cases holding that the unattended motor vehicle statute was designed to protect a miscreant from his own misconduct.[7]

We acknowledge that the plaintiff's decedent was not driving the stolen vehicle at the time of the crash that resulted in his death; however, his complicity in the crime places him outside the sphere of persons designed by the Legislature to be within the zone of protection afforded by a violation of the unattended motor vehicle statute. We therefore hold that a person who participates in the theft of a motor vehicle, and is injured thereafter as a result of the operation of that stolen motor vehicle, is not within the class of persons that the Legislature designed the unattended motor vehicle statute to benefit.[8] Accordingly, because the plaintiff's decedent is not within the class of persons that the unattended motor vehicle statute was designed to protect, the statute does not create a private cause of action for the plaintiff against the owner of the automobile whose conduct may have facilitated its theft.

## B.

### *Common Law Cause of Action*

Although we have determined that a common law negligence cause of action against

---

7. As will be discussed in the next portion of the opinion, there are cases analogizing thieves to that of trespassers under a common law theory. *See infra* III.B.

8. The more common question raised under a violation of the unattended motor vehicle statute is whether innocent third persons are within the class of persons protected under the statute. Because the factual pattern in this case does not involve innocent third persons, we need not address this facet of the question and reserve opinion on that subject for another day. A catalog of cases on this point is found in William H. Danne, Jr., Annotation, *Liability of Motorist Who Left Key in Ignition for Damage or Injury Caused by Stranger Operating the Vehicle*, 45 A.L.R.3d 787 (1972); a scholarly comment on the subject of harm caused by thieves driving stolen automobiles is found in Cornelius J. Peck, *An Exercise Based Upon Empirical Data: Liability for Harm Caused by Stolen Automobiles*, 1969 Wis. L.Rev. 909, 915 (1969) (indicating that the accident rate for stolen vehicles is approximately two hundred times greater than the normal accident rate).

the owner of a motor vehicle by virtue of an alleged violation of the unattended motor vehicle statute does not arise to benefit a person who was an accomplice to the theft of that motor vehicle, it is still necessary to examine whether a common law cause of action exists against the owner of the stolen motor vehicle independent of the unattended motor vehicle statute.

■■ We are required to analyze the rudiments of a common law negligence claim by starting with a discussion that a common law negligence theory cannot proceed unless there is a duty owed by the alleged culpable person to the injured person. No action for negligence will lie without a duty broken. Syllabus Point 1, *Parsley v. General Motors Acceptance Corp.,* 167 W.Va. 866, 280 S.E.2d 703 (1981); *see also Robertson v. LeMaster,* 171 W.Va. 607, 301 S.E.2d 563 (1983). Whether there is a duty of care owed to another is a question that must be determined as a matter of law by the court. *See Jack v. Fritts,* 193 W.Va. 494, 498, 457 S.E.2d 431, 435 (1995) (citing *Parsley,* 167 W.Va. at 870, 280 S.E.2d at 706).

■ The question thus framed is what is the duty of care owed by the owner of an automobile to those participating in the theft of that automobile who are subsequently injured from its negligent operation? The nature of the duty owed by the owner of an automobile to a thief is analogous to the duty that a landowner owes to a trespasser. While the issue of a duty to a trespasser is most commonly expressed in the context of trespass to real property, there is no reason why it is not applicable in a personal property construct. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 58, at 393 n. 5 (5th ed. 1984) ("Most of the cases have involved trespassers on land; but the same rules are applied to trespassers on personal property."). *See also Belton v. Washington Metro. Area Transit Auth.,* 20 F.3d 1197, 1202 (D.C.Cir.1994) (acknowledging that while a person leaning against a bus may not rise to the level of trespass, thereby "trigger[ing] a laxer standard of care," commentators and case law support a "wilful and wanton" standard of care for

owners to trespassers of personal property as well as real property).

The Restatement of Torts recognizes the notion of trespass to personal property as follows:

A trespass to a chattel may be committed by intentionally

(a) dispossessing another of the chattel, or

(b) using or intermeddling with a chattel in the possession of another.

Restatement (Second) of Torts § 217 (1965).

We did not distinguish real from personal property in our recent definition of a trespasser in Syllabus Point 1, *Huffman v. Appalachian Power Co.,* 187 W.Va. 1, 415 S.E.2d 145 (1991):

A trespasser is one who goes upon the property or premises of another without invitation, express or implied, and does so out of curiosity, or for his own purpose or convenience, and not in the performance of any duty to the owner.

We look also to our decision in *Spence v. Browning Motor Freight Lines, Inc.,* 138 W.Va. 748, 77 S.E.2d 806 (1953), where a minor was injured while riding as a passenger in direct contravention of a company rule prohibiting nonemployees from riding in its motor vehicles. We determined in *Spence* that the minor occupied the status of a trespasser since he knew that he was riding in the motor vehicle in contravention of a company rule, and therefore, the extent of the duty owed by the company, as the owner of the motor vehicle, to the minor/trespasser was nothing more than to refrain from willful and wanton misconduct. *Id.*

We therefore hold that the owner of a motor vehicle does not owe a common law duty of ordinary care to those who participate in the theft of that motor vehicle; with regard to those who participate in the theft of a motor vehicle, the owner need only refrain from willful or wanton misconduct. *See Williams v. Bill's Custom Fit, Inc.,* 821 S.W.2d 432, 433–34 (Tex.Ct.App.1991) (holding that a fifteen-year-old boy, rendered a quadriplegic from an auto accident, was a trespasser of the vehicle of the defendant, which was stolen by the boy's friend).

We have defined willful and wanton misconduct on a number of occasions as follows: "wilfulness and wantonness convey the idea of purpose or design, actual or constructive." *Stone v. Rudolph*, 127 W.Va. 335, 349, 32 S.E.2d 742, 749 (1944); *see Barr v. Curry*, 137 W.Va. 364, 71 S.E.2d 313 (1952). We went on to say in *Stone* that "[i]n order that one may be held guilty of wilful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result." *Stone*, 127 W.Va. at 349, 32 S.E.2d at 749–50 (quoting *Thomas v. Snow*, 162 Va. 654, 174 S.E. 837, 839 (1934)).

■ This record is barren of any evidence that the defendant acted with a purpose or design to do harm to people that he did not know, nor ever thought he would know. Because there is no evidence of any willful or wanton misconduct on the part of the defendant, the evidence is not legally sufficient to sustain the verdict, and under our standard of review, it is the obligation of this Court to affirm the circuit court's granting of the motion for judgment notwithstanding the verdict.[9]

## IV.

### INTERVENING EFFICIENT CAUSE

Because the plaintiff's decedent was not a person entitled to rely on the unattended motor vehicle statute, and because the defendant did not willfully or wantonly cause the death of the plaintiff's decedent, we have sufficient grounds to affirm the decision of the trial court in granting the motion for

judgment notwithstanding the verdict, and our discussion could end here. However, because the trial court felt compelled to grant the motion based on the absence of proximate cause, we will discuss the status of the law on the proximate cause issue for informational purposes.

■ We find some authority to support the trial court's granting of the motion for judgment notwithstanding the verdict on the ground that the negligence of the thief in driving the stolen automobile in such a manner that caused the death of the plaintiff's decedent was an intervening efficient cause that interrupted the chain of causation between the defendant's act in allowing his keys to be conveniently available to facilitate the theft of the automobile and the death of the plaintiff's decedent. Generally, a willful, malicious, or criminal act breaks the chain of causation. *See Roadway Express, Inc. v. Piekenbrock*, 306 N.W.2d 784, 785 (Iowa 1981) (recognizing that other states have denied liability on the grounds that "failure to remove the key in itself, although negligent, is not the proximate cause of the injuries resulting from the thief-driver's tortious conduct"); *see also Anderson v. Theisen*, 231 Minn. 369, 43 N.W.2d 272, 274 (1950). Some jurisdictions have expanded on the intervening efficient cause doctrine by requiring that the intervening acts of a thief must have been unforeseeable in order for an auto owner to be relieved of his liability as a result of his negligence. *Stone v. Bethea*, 251 S.C. 157, 161 S.E.2d 171, 174–75 (1968) (negligence and willfulness of car thief was an intervening act and was the sole, proximate, and efficient cause of a third party's injuries, which could not have been foreseen by the car owner).

9. We note that while the circuit court granted the defendant's judgment notwithstanding the verdict on a proximate cause theory rather than a duty theory (as discussed in this opinion), we are not confined to affirming the judgment strictly on the grounds given by the lower court. In reviewing an appeal of a circuit court's order, we look not to the correctness of the legal ground upon which the circuit court based its order, but rather, to whether the order itself is correct, and we will uphold the judgment if there is another

valid legal ground to sustain it. Syllabus Point 2, *Work v. Rogerson*, 149 W.Va. 493, 142 S.E.2d 188 (1965), *overruled on other grounds by Pearson v. Dodd*, 159 W.Va. 254, 221 S.E.2d 171 (1975) (subsequent history omitted); Syllabus Point 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965); Syllabus Point 5, *Rollins v. Daraban*, 145 W.Va. 178, 113 S.E.2d 369 (1960); Syllabus Point 3, *Shrewsbury v. Miller*, 10 W.Va. 115 (1877).

As we noted, this case presents the first opportunity to discuss the scope of the unattended motor vehicle statute. We have, however, addressed the issue of intervening efficient causes and their effect on the chain of causation:

> A tortfeasor whose negligence is a substantial factor in bringing about injuries is not relieved from liability by the intervening acts of third persons if those acts were reasonably foreseeable by the original tortfeasor at the time of his negligent conduct.

Syllabus Point 13, *Anderson v. Moulder,* 183 W.Va. 77, 394 S.E.2d 61 (1990). We believe that the trial court had sufficient authority to conclude that the theft of the car and the subsequent acts of the plaintiff's decedent and his friends were intervening efficient acts which were not foreseeable by the defendant; thereby breaking the chain of causation which originally began with the defendant's negligent act and relieving the defendant of any liability.

The judgment granted to the defendant notwithstanding the verdict is hereby affirmed.

Affirmed.