617 S.E.2d 887

**Raymond CANFIELD, Gary Roy and Richard Teter, Appellants Below, Appellees,**

v.

**WEST VIRGINIA DIVISION OF CORRECTIONS and West Virginia Division of Personnel, Appellees Below, Appellants,**

**West Virginia Division of Corrections, Huttonsville Correctional Center, Appellants.**

No. 32287.

Supreme Court of Appeals of West Virginia.

Submitted May 11, 2005.

Decided July 6, 2005.

Darrell V. McGraw, Jr., Attorney General, John Boothroyd, Assistant Attorney General, Charleston, for the Appellants West Virginia Division of Corrections and Huttonsville Correctional Center.

Darrell V. McGraw, Jr., Attorney General, Karen O'Sullivan Thornton, Assistant Attorney General, Charleston, for the Appellant West Virginia Division of Personnel.

David H. Wilmoth, Elkins, WV, for the Appellees, Canfield, Roy and Teter.

DAVIS, Justice:

This case involves grievances by three employees of the Huttonsville Correctional Center who all sustained work related injuries, received Workers' Compensation Temporary Total Disability benefits (hereinafter referred to as "TTD benefits"), and, during the period for which they received TTD benefits, were all denied accrual of sick leave time, holiday pay, accrual of credit for years of service, and accrual of annual leave (hereinafter sometimes referred to as "fringe benefits"), pursuant to policies and legislative rules promulgated by the West Virginia Division of Personnel (hereinafter referred to as "the DOP"). At each level of the grievance process, the three employees were denied the fringe benefits they sought. On appeal, however, the circuit court reversed the ruling of the level IV Administrative Law Judge (hereinafter referred to as "ALJ") and struck down the policies and rules of the DOP as discriminatory. We now affirm the circuit

court's finding of discrimination as it relates to the accrual of credit for years of service and annual leave, based upon our conclusion that those rules violate the equal protection clause of the West Virginia Constitution, but we reverse the circuit court's ruling as it relates to the accrual of sick leave and to the receipt of holiday pay, as we find those policies and rules bear a reasonable relationship to a proper governmental purpose.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Raymond Canfield, Gary Roy and Richard Teter, appellants below and appellees (hereinafter collectively referred to as "the Appellee/Employees"), are all employees of the West Virginia Division of Corrections and work at the Huttonsville Correctional Center, appellees below and appellants herein (hereinafter collectively referred to as "Huttonsville"). Each of these men sustained a work related injury and received Workers' Compensation Temporary Total Disability benefits for a period of time.[1] Following their work related injuries, each man was notified by Huttonsville that he could elect to receive TTD benefits, or he could use his accrued sick leave and annual leave, but not both. The men allegedly were also informed that, during the period TTD benefits were received, they would be considered to be on a leave of absence without pay. Accordingly, they would not accrue annual and sick leave, credit for years of service, or be paid for holidays (hereinafter collectively referred to as "fringe benefits").[2] All three men elected to receive TTD benefits.[3] Each of the men had initially used sick days for their absences until their TTD benefits began. Once the men began receiving TTD benefits, they each bought back their sick leave time pursuant to a rule promulgated by the West Virginia Division of Personnel. *See* W. Va. C.S.R.

§ 143–3–3.1(b)(2); W. Va.Code § 23–4–1 (1989) (Repl. Vol. 2002).

Each of these men then filed a grievance claiming that the denial of certain fringe benefits during the period for which they received TTD benefits violated W. Va.Code 23–5A–1 (1978) (Repl. Vol. 2002). These grievances ultimately reached level IV, where the ALJ determined that a state employee who suffers a job-related injury and elects to receive Workers' Compensation benefits does not accrue the requested fringe benefits.

The Appellee/Employees appealed the ALJ's decision to the Circuit Court of Randolph County. The circuit court found that the administrative rules denying the accrual of fringe benefits to employees receiving TTD benefits violated W. Va.Code § 23–5A–1 by depriving these men of benefits enjoyed by other employees who are injured and miss work. Based upon this finding, the circuit court reversed the ALJ. This appeal by Huttonsville followed. The West Virginia Division of Personnel filed a motion to intervene, which we granted. Having before us the briefs of the various parties and the record submitted on appeal, and having heard the oral arguments presented and considered the relevant authority, we now affirm in part, reverse in part, and remand the circuit court's order.

## II.

## STANDARD OF REVIEW

In this case we are asked to review an order of a circuit court that reversed an order rendered by an ALJ of the West Virginia Education and State Employees Grievance Board. We have explained our general standard for reviewing such orders as follows:

Grievance rulings involve a combination of both deferential and plenary review.

---

1. Raymond Canfield was injured in an automobile accident and received temporary total disability benefits from December 26, 2000, to September 1, 2002 (approximately twenty months). The details of Gary Roy's injury are not set out in the briefs; however, he received temporary total disability benefits from February 9, 1998, to January 10, 2000 (twenty-three months). Richard Teter was also injured in an automobile accident. He received temporary total disability benefits

from December 26, 2000, to January 15, 2001 (approximately 20 days).

2. *See* Division of Personnel Workers' Comp/Sick Leave Policy; W. Va. C.S.R. § 143–1; and 143–3.

3. Had they elected to use their accumulated sick leave and annual leave, the men would have accrued sick leave, annual leave, service credit and holiday pay during their absences.

Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. pt. 1, *Cahill v. Mercer County Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000). In this instance, we are not asked to resolve any dispute with respect to the factual findings that were rendered below. Instead, the questions presented on appeal are purely legal as they involve the proper application of statutes and the policies and rules purporting to put those statutes into effect. Accordingly, as noted above, our review is de novo. Accord *Maikotter v. University of West Virginia Bd. of Trustees/West Virginia Univ.*, 206 W.Va. 691, 694, 527 S.E.2d 802, 805 (1999) ("Although we accord great deference to the findings of fact of the West Virginia Educational Employees Grievance Board, we review, *de novo*, questions of law."); Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."). With due regard for the standard under which we conduct our review, we proceed to our analysis of this case.

## III.

## DISCUSSION

Throughout the proceedings in these consolidated grievances, the Appellee/Employees have contended that they have been discriminated against in violation of W. Va.Code § 23–5A–1 (1978) (Repl. Vol. 2002) [4] by being

denied various fringe benefits while not working and receiving Workers' Compensation TTD benefits, when employees who are not working but using their accrued sick leave benefits receive these fringe benefits. Following the hearing of the level IV grievance in this matter, the ALJ for the West Virginia Education and State Employees Grievance Board rendered a written decision dated April 18, 2003, wherein she observed that

[b]y administrative rule, 143 CSR 3 (2000), DOP has addressed employees' receipt of temporary total disability benefits in detail, providing that, ... an employee who elects to receive temporary total disability benefits must apply for a medical leave of absence without pay. These employees do continue to accrue credit for increment pay, but do not receive years of service credit, annual leave, or sick leave, in accordance with DOP's "Workers' Comp/Sick Leave Policy" (2000).

The ALJ then concluded that the "[g]rievants have failed to prove by a preponderance of the evidence that they are entitled to credit for sick leave, annual leave, and seniority time while off work and receiving Workers' Compensation benefits." [5] On appeal, the circuit court reversed the ALJ's order, reasoning that

the record reflects that an employee who uses sick leave would continue to accrue all the benefits the Appellants['] request. When an employee elects to receive worker's compensation benefits, he cannot be discriminated against for doing so. Clearly, the Appellee's position of denying these ... benefits results solely from the Appellants' application for temporary total disability benefits. To sustain Appellee's position would therefore violate *W. Va.Code* § 23–5A–1, because to do so penalizes the employee by not awarding them benefits enjoyed by other employees who are injured and miss work ....

---

4. W. Va.Code § 23–5A–1 (1978) (Repl. Vol. 2002) states that "[n]o employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive benefits under this chapter."

5. The ALJ did not address the grievants' claim, as asserted before the circuit court and this

Court, that they are also entitled to holiday pay. Insofar as the grievant's claim for holiday pay presents a legal question that does not rely upon any factual developments in the record, and because that question was addressed by the circuit court, we will likewise address the issue on appeal.

Huttonsville argues that the circuit court erred when it reversed the order of the ALJ in this matter. As we will explain, we agree with Huttonsville with respect to two of the desired fringe benefits, but we disagree as to two others.

 Notwithstanding the fact that the Appellee/Employees in these cases, as well as the circuit court, have addressed the discrimination claims in the context of W. Va.Code § 23–5A–1, we find that the appropriate analysis [6] for these discrimination claims comes under our equal protection law.[7] With respect to an equal protection analysis, we have explained that "[m]ost legislative classifications, including those which involve economic rights, are subjected to a minimum level of scrutiny, the traditional equal protection concept that the legislative classification will be upheld if it is reasonably related to the achievement of a legitimate state purpose." *Robinson v. Charleston Area Med. Ctr., Inc.*, 186 W.Va. 720, 726, 414 S.E.2d 877, 883 (1991). In other words,

"[w]here economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause."

Syl. pt. 1, in part, *State ex rel. Boan v. Richardson*, 198 W.Va. 545, 482 S.E.2d 162 (1996). Following the foregoing framework, we will examine the DOP policy with respect to each fringe benefit claimed to determine if classification imposed with respect thereto "is reasonably related to the achievement of a legitimate state purpose." *Robinson*, 186 W.Va. at 726, 414 S.E.2d at 883.

### A. Accruing Sick Leave

 The DOP's policy with respect to TTD recipients accruing sick leave states that "sick leave shall not accrue while an employee is on such leave of absence without pay." West Virginia Division of Personnel Workers' Comp./Sick Leave Policy § III(B)(c) (2000).[8] To the contrary, employ-

---

6. To the extent that we are deciding this case on grounds different from those asserted by the circuit court, we note that "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. pt. 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965). *Accord Jordache Enters., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 204 W.Va. 465, 484, 513 S.E.2d 692, 711 (1998) (same) (quoting *Barnett*). *See also Yourtee v. Hubbard*, 196 W.Va. 683, 690 n. 9, 474 S.E.2d 613, 620 n. 9 (1996) ("[W]e are not confined to affirming the judgment strictly on the grounds given by the lower court. In reviewing an appeal of a circuit court's order, we look not to the correctness of the legal ground upon which the circuit court based its order, but rather, to whether the order itself is correct, and we will uphold the judgment if there is another valid legal ground to sustain it."); *Murphy v. Smallridge*, 196 W.Va. 35, 36–37, 468 S.E.2d 167, 168–69 (1996) ("An appellate court is not limited to the legal grounds relied upon by the circuit court, but it may affirm or reverse a decision on any independently sufficient ground that has adequate support.").

7. We have taken this approach because Huttonsville has argued that its conduct has been based upon policies and legislative rules promulgated by the DOP. Because Huttonsville is relying upon policies and legislative rules to support its conduct, the analysis simply does not fit within the framework of a discrimination claim under W. Va.Code § 23–5A–1, which we have described thusly:

1. In order to make a prima facie case of discrimination under W. Va.Code, 23–5A–1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W. Va.Code, 23–1–1, *et seq.*; and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee.

2. When an employee makes a prima facie case of discrimination, the burden then shifts to the employer to prove a legitimate, nonpretextual, and nonretaliatory reason for the discharge. In rebuttal, the employee can then offer evidence that the employer's proffered reason for the discharge is merely a pretext for the discriminatory act.

Syl. pts. 1 & 2, *Powell v. Wyoming Cablevision, Inc.*, 184 W.Va. 700, 403 S.E.2d 717 (1991).

8. This policy is founded on a legislative rule promulgated by the DOP that states "[s]ick leave cannot be accrued for hours not paid . . . ." W. Va. C.S.R. § 143–1–14.4(a). Because Workers'

ees on sick leave are permitted to accrue additional sick leave benefits during their absence from work. The question we must ask under the equal protection analysis is whether this distinction between employees on sick leave and those receiving TTD benefits is "reasonably related to the achievement of a legitimate state purpose" related to the accrual of sick leave. *Robinson,* 186 W.Va. at 726, 414 S.E.2d at 883. We believe that it is.

While there is nothing in the Workers' Compensation Statute directly prohibiting the accrual of sick leave benefits during a period of receiving TTD benefits, we believe this rule is in accordance with the intent of the legislature with respect to the Workers' Compensation System. Certainly, the Workers' Compensation policy of providing timely benefits to claimants while being fiscally responsible and controlling the costs to employers would not tolerate a duplication in the benefits received by claimants. *See, e.g.,* W. Va.Code § 23–1–1 (2003) (Supp.2004) ("It is the further intent of the Legislature that this chapter be interpreted so as to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to the provisions of this chapter."). *Cf. Carter v. Spieler,* 183 W.Va. 126, 130, 394 S.E.2d 528, 532 (1990) ("It does not take a mathematical genius to realize that claimants in the petitioners' situations stand to receive a windfall in clear violation of the statutory intent absent the deducting of 'overlapping' PPD awards."). We perceive that the accrual of sick leave time during a period of receiving TTD benefits amounts to such a duplication in benefits.

An employee who elects to use sick leave for an illness or injury does accrue additional sick-leave during the period of absence from

work, however, that employee also depletes his or her accrued sick leave by the number of days he or she is absent from work. The depletion is on a day for day basis, while new days are accrued at a rate of 1.5 days per month. *See* W. Va. C.S.R. § 143–1–14.4(a). Thus, sick leave days are used up at a much faster rate than they are replaced.

To the contrary, an employee who is receiving Workers' Compensation TTD benefits does not deplete his or her sick leave during the time of his or her absence from work. Thus, allowing such an employee to earn additional days, when no days are being depleted, would be effectively duplicating benefits.

Accordingly, we find that there is a rational basis for distinguishing between employees who are on sick leave and those who are receiving TTD benefits with respect to the accrual of sick leave. Consequently, the policy of the DOP does not violate the equal protection clause.

### B. Holiday Pay

The DOP's policy regarding holiday pay states that "holidays occurring during this period [of an unpaid medical leave of absence] will not be paid." West Virginia Division of Personnel Workers' Comp./Sick Leave Policy § III(B)(c).[9] Employees on sick-leave, however, are paid for holidays that occur during the period of time they are absent from work. Again following our equal protection analysis, we must decide whether this distinction between employees on sick leave and those receiving TTD benefits is "reasonably related to the achievement of a legitimate state purpose" relating to holiday pay. *Robinson,* 186 W.Va. at 726, 414 S.E.2d at 883. We believe that it is.

Compensation TTD recipients are classified as being on unpaid medical leave, they are not paid and thus cannot accrue sick leave under the DOP rules. *See* W. Va. C.S.R. § 143–3–3.1(c)(2) ("An employee electing to receive temporary total disability benefits must apply for a medical leave of absence without pay.").

**9.** This policy is founded on a legislative rule promulgated by the DOP that states "[a]n employee must either work or be on approved paid leave for either the full scheduled workday be-

fore or after the holiday and either work or be on approved paid leave for any fraction of the scheduled workday before or after the holiday to receive pay for the holiday." W. Va. C.S.R. § 143–1–14.1(d). Because Workers' Compensation TTD recipients are classified as being on *unpaid* medical leave, they are not paid for holiday's under the DOP legislative rules. *See* W. Va. C.S.R. § 143–3–3.1(c)(2) ("An employee electing to receive temporary total disability benefits must apply for a medical leave of absence without pay.").

As with the accrual of sick leave, we think the rule denying holiday pay is justifiable in order to avoid a duplication in benefits. The Legislature has established a formula for calculating the wage replacement aspect of TTD benefits. Pursuant to the statute that was in effect at the time the Appellee/Employees received their TTD benefits, the formula allowed them to receive "a maximum weekly benefit to be computed on the basis of seventy percent of the average weekly wage earnings, wherever earned, of the injured employee, at the date of injury, not to exceed one hundred percent of the average weekly wage in West Virginia[.]" W. Va. Code § 23–4–6 (1999) (Repl. Vol. 2002).[10] To allow additional wage payments for holidays that fall within the period of an employees receipt of TTD benefits would provide additional compensation in excess of the Legislatively-adopted formula. In other words, paying TTD recipients for holidays would duplicate the statutorily mandated benefits established in the Workers' Compensation Act. There is no such duplication of benefits to an employee who is off work on sick leave.

Accordingly, we find that the DOP policy of denying holiday pay to TTD recipients, while granting holiday pay to employees on sick leave, bears a reasonable relationship to a proper government purpose and does not violate the equal protection clause.

## C. Seniority

■ The DOP's policy with respect to seniority states that "[e]mployees of the State of West Virginia ... while receiving TTD benefits during absences from work due to a work related, compensable injury, ... do not accrue credit for years of service." West Virginia Division of Personnel Workers' Comp./Sick Leave Policy § III(B)(1)(a).[11] Nevertheless, employees on sick leave are permitted to accrue credit for years of ser-

vice. Accordingly, the question we must ask under the equal protection analysis is whether this distinction between employees on sick leave and those receiving TTD benefits is "reasonably related to the achievement of a legitimate state purpose" with respect to the accrual of credit for years of service. *Robinson*, 186 W.Va. at 726, 414 S.E.2d at 883. We find no rational basis for this distinction.

Huttonsville defends the policy denying the accrual of credit for years of service to TTD recipients on the ground that employees receiving TTD benefits are required to apply for an unpaid medical leave of absence [12] and, in this respect, TTD recipients are treated the same as all other employees who are on an unpaid medical leave of absence. This classification we find troubling.

Employees may elect to take an unpaid medical leave of absence without pay for an injury or illness that is not work related, that is an injury or illness that has no connection to any services being performed on behalf of an employer, so long as a physician/practitioner has verified that "the employee is unable to perform his or her duties and giving a date for the employee's return to work or the date the employee's medical condition will be re-evaluated." W. Va. C.S.R. § 143–1–14.8(c)(1)(b). Because the injury or illness was not work related, the employee must exhaust his or her accrued sick leave benefits before applying for unpaid medical leave. W. Va. C.S.R. § 143–1–14.8(c)(1)(a). Moreover, employees electing to take an unpaid medical leave of absence may not retain that status for more than six months in a twelve month period. W. Va. C.S.R. § 143–1–14.8(c)(1).

To the contrary, an employee receiving TTD benefits must apply for a medical leave of absence for an injury that was sustained on the job while performing services to bene-

---

10. Under the version of this statute presently in effect,

the employee shall receive during the continuance of the disability a maximum weekly benefit to be computed on the basis of sixty-six and two-thirds percent of the average weekly wage earnings, wherever earned, of the injured employee, at the date of injury, not to exceed one hundred percent of the average weekly wage in West Virginia[.]

W. Va.Code § 23–4–6 (2003) (Supp.2004).

11. This policy is founded on a legislative rule promulgated by the DOP that states "[a]n employee electing to receive temporary total disability benefits ... does not accrue credit for years of service." W. Va. C.S.R. § 143–3–3.2(b).

12. *See* W. Va. C.S.R. § 143–3–3.1(c)(2) ("An employee electing to receive temporary total disability benefits must apply for a medical leave of absence without pay.").

fit the employer. Because the injury or illness is work related, the employee is not required to exhaust sick leave. Moreover, the employee technically is not unpaid, because he or she is receiving wage replacement and medical benefits under the Workers' Compensation System. Under current law, the TTD recipient may continue to receive those benefits for up to two years (as opposed to the six month limitation on other employees).[13] Based upon these important differences, we conclude that the classification of Workers' Compensation TTD recipients with all recipients of unpaid medical leave is not rationally based on social, economic, historic or geographic factors.

Huttonsville also asserts that not allowing TTD recipients to accrue credit for years of service while employees on sick leave are permitted to accrue this benefit is justified on the basis of a "no work/no pay" policy. This theory is unpersuasive at the outset because employees on sick-leave, and who are permitted to accrue credit for years of service during their period of leave, are not present and working to earn the benefit. To the extent that Huttonsville claims that employees using sick-leave have had to earn the leave by virtue of their presence at work over time, we note that TTD recipients have likewise "earned" their time off from work by sustaining an injury "in the course of and resulting from their covered employment." Indeed, Huttonsville's "no work/no pay" policy fails to acknowledge that, unlike other employees who are on an unpaid medical leave of absence, the sole reason the TTD recipient employee is unable to be present at his or her job is due to an injury sustained *in service to the employer.* Thus, this policy unjustly penalizes employees who have sustained a work-related injury in that they are deprived of the opportunity to accrue years of service time for a period they are unable to work solely due to an injury they sus-

tained on the job. Because we perceive of no rational basis for distinguishing between TTD recipients and employees on sick leave when it comes to the accrual of years of service, we find that this policy violates the equal protection clause of the West Virginia Constitution.

### D. Annual Leave

The DOP's policy with respect to annual leave states that "[a]nnual ... leave shall not accrue while an employee is on such leave of absence without pay[.]" West Virginia Division of Personnel Workers' Comp./Sick Leave Policy § III(B)(1)(c).[14] Nevertheless, employees who are on sick leave are permitted to accrue annual leave. Under the equal protection analysis, the question we must answer then, is whether a distinction between employees on sick leave and those receiving TTD benefits is "reasonably related to the achievement of a legitimate state purpose" with respect to the accrual of annual leave. *Robinson,* 186 W.Va. at 726, 414 S.E.2d at 883. We find none.

As with the accrual of credit for years of service, Huttonsville defends this policy as treating TTD recipients the same as all other employees who are on an unpaid medical leave of absence. Huttonsville additionally asserts the "no work/no pay" policy. For the same reasons expressed with respect to the accrual of credit for years of service, we find no rational basis for distinguishing between TTD recipients and employees on sick leave when it comes to the accrual of annual leave. Accordingly, we find that this policy violates the equal protection clause of the West Virginia Constitution.

### E. Summary

In sum, based upon the forgoing analysis, we hold that the West Virginia Division of

---

**13.** *See* W. Va.Code § 23–4–6(c) (2003) (Supp. 2004) (An "aggregate award for a single injury for which an award of temporary total disability benefits is made on or after the effective date of the amendment and reenactment of this section in the year two thousand three shall be for a period not exceeding one hundred four weeks.").

**14.** This policy is founded on a legislative rule promulgated by the DOP that states "[a]nnual

leave cannot be accrued for hours not paid ...." W. Va. C.S.R. § 143–1–14.3(a). Because Workers' Compensation TTD recipients are classified as being on *unpaid* medical leave, they are not paid and therefore cannot accrue annual leave the DOP legislative rules. *See* W. Va. C.S.R. § 143–3–3.1(c)(2) ("An employee electing to receive temporary total disability benefits must apply for a medical leave of absence without pay.").

Personnel policies and rules prohibiting employees who are receiving Workers' Compensation Temporary Total Disability benefits from also accruing sick leave benefits and from receiving holiday pay are reasonably related to a proper government purpose and do not violate the equal protection clause of Section 10, Article III, of the West Virginia Constitution. We additionally hold that the West Virginia Division of Personnel policies and rules prohibiting employees who are receiving Workers' Compensation Temporary Total Disability benefits from also accruing credit for years of service and annual leave are not related to a proper government purpose and, therefore, violate the equal protection clause of Section 10, Article III, of the West Virginia Constitution.

## IV.

### CONCLUSION

For the reasons explained in the body of this opinion, the March 3, 2004, order of the Circuit Court of Randolph County is affirmed insofar as it found the West Virginia Division of Personnel policies and rules prohibiting employees who are receiving Workers' Compensation Temporary Total Disability benefits from also accruing credit for years of service and annual leave are discriminatory. However, the order of the circuit court is reversed insofar as it found that the West Virginia Division of Personnel policies and rules prohibiting employees who are receiving Workers' Compensation Temporary Total Disability benefits from also accruing sick leave benefits and from receiving holiday pay are discriminatory. Accordingly, this case is remanded to the circuit court for the entry of an order not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.